Slip Op. 17-134

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| UNITED STATES,<br><br>               Plaintiff,<br><br>    v.<br><br>UPS SUPPLY CHAIN SOLUTIONS, INC., GREAT AMERICAN ALLIANCE INSURANCE CO., AMERICAN SERVICE INSURANCE CO., and 4174925 CANADA INC.,<br><br>               Defendants. | Before: Leo M. Gordon, Judge<br><br>Court No. 16-00010 |

**OPINION and ORDER**

[Defendant Majestic Mills' motion to dismiss co-Defendant UPS's cross-claim granted in part and denied in part.]

Dated: September 29, 2017

    Erin K. Murdock-Park, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC for Plaintiff United States. With her on the pleadings were Chad A. Readler, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and Patricia M. McCarthy, Assistant Director.

    Lars-Erik A. Hjelm and Casey K. Richter, Akin Gump Strauss Hauer & Feld, of Washington, DC for Defendants UPS Supply Chain Solutions, Inc. and Great American Alliance Insurance Company.

    John B. Brew and Frances P. Hadfield, Crowell & Moring LLP, of New York, NY for Defendant 4174925 Canada Inc.

    T. Randolph Ferguson, Sandler, Travis & Rosenberg, P.A., of San Francisco, CA for Defendant American Service Insurance Company.

    **Gordon, Judge:** Before the court is the motion of Defendant 4174925 Canada, Inc. d/b/a Majestic Mills ("Majestic Mills") to dismiss the cross-claims brought by co-Defendant

UPS Supply Chain Solutions, Inc. ("UPS"), pursuant to USCIT Rule 12(b)(1) for lack of subject-matter jurisdiction and USCIT Rule 12(b)(6) for failure to state a claim upon which relief can be granted. See Def. Majestic Mills' Mem. Supp. Mot. to Dismiss UPS's Cross-Claim, ECF No. 55 ("Majestic Mills' Mot."); see also UPS's Answer & Cross-Claim, ECF No. 39 ("UPS's Cross-Claim"); Majestic Mills' Answer to Cross-Claim, ECF No. 50 ("Majestic Mills' Cross-Claim Answer"); UPS's Resp. in Opp'n to Majestic Mills' Mot. to Dismiss, ECF No. 61 ("UPS's Resp."); Majestic Mills' Reply in Supp. of Mot. to Dismiss, ECF No. 66 ("Majestic Mills' Reply"). As discussed further below, the court has subject-matter jurisdiction over UPS's cross-claim pursuant to 28 U.S.C. § 1583(1). The court, though, does grant in part Majestic Mills' motion to dismiss pursuant to USCIT Rule 12(b)(6) for failure to state a claim.

## I. Background

In the underlying action, Plaintiff United States, on behalf of U.S. Customs and Border Protection ("Customs"), brought claims against Majestic Mills, UPS, American Service Insurance Co. ("ASI"), and Great American Alliance Insurance Co. ("Great American") (collectively, "Defendants") for unpaid duties and civil penalties under Section 592 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1592(a) and (d) (2012).[1] See Am. Compl. ¶¶ 1, 3, ECF No. 15. Majestic Mills is a Canadian manufacturer of women's apparel and UPS is the customs broker and nominal importer of record of approximately 272 entries of wearing apparel and fabrics ("subject merchandise") on

---

[1] Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title 19 of the U.S. Code, 2012 edition.

behalf of Majestic Mills. See UPS's Cross-Claim at 6; Majestic Mills' Mot. at 2-3; UPS's Resp. at 1-2. Great American and ASI served as sureties on bonds guaranteeing payment of all duties, taxes, and fees due to the United States on Majestic Mills' entries of the subject merchandise. See Am. Compl. ¶¶ 8-13. Relying on information provided by Majestic Mills, UPS claimed preferential tariff treatment to Customs on these imports under NAFTA Rules of Origin. See Am. Compl. ¶¶ 15-17; UPS's Cross-Claim at 2-3. After Majestic Mills filed an attempted prior disclosure with Customs pursuant to 19 U.S.C. § 1592(c)(5) to correct the classification of its imports, Customs demanded payment from Defendants for unpaid duties and fees. Am. Compl. ¶¶ 20-39. UPS, ASI, and Great American have all settled with the United States, and so the only claims presently remaining before the court are Plaintiff's claim against Majestic Mills, Majestic Mills' counterclaim against Plaintiff, and UPS's cross-claim against Majestic Mills. See Pl.'s Resp. to Mot. to Extend Proceedings (Sept. 9, 2016), ECF No. 45 (explaining settlement with ASI); Order Pursuant to R. 41(a) Dismissing Claims Against ASI (Oct. 5, 2016), ECF No. 48; Joint Motion to Dismiss Claims Against UPS & Great American (Aug. 8, 2017), ECF No. 67 (noting settlement with UPS & Great American); Order Pursuant to R. 41(a)(2) Dismissing Claims Against UPS and Great American (Aug. 9, 2017), ECF No. 70.

In its cross-claim, UPS alleges four causes of action against Majestic Mills. See UPS's Cross-Claim. The first cause of action is for indemnification, as UPS alleges that Majestic Mills agreed to indemnify UPS from any liabilities arising from the importation of the subject merchandise through a series of contractual agreements

between the two parties. Id. at 8-10. The other three causes of action—breach of contract, fraud, and negligent misrepresentation—stem from Majestic Mills' provision of inaccurate information to UPS upon which UPS relied to make tariff classifications to Customs. Id. at 10-13. Majestic Mills moves to dismiss UPS's cross-claim on various grounds, including lack of subject-matter jurisdiction, failure to state a claim upon which relief can be granted, inadequate pleading of UPS's claims, and for filing suit outside the applicable statute of limitations. See Majestic Mills' Mot.

## II. Standard of Review

The claimant carries "the burden of demonstrating that jurisdiction exists." Techsnabexport, Ltd. v. United States, 16 CIT 420, 422, 795 F. Supp. 428, 432 (1992) (citing McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936)). If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action. USCIT Rule 12(h)(3). In deciding a USCIT Rule 12(b)(1) motion to dismiss that does not challenge the factual basis for the complainant's allegations and a USCIT Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can granted, the court assumes all factual allegations to be true and draws all reasonable inferences in the claimant's favor. Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995) (subject-matter jurisdiction); Cedars-Sinai Med. Ctr. v. Watkins, 11 F.3d 1573, 1583-84 & n.13 (Fed. Cir. 1993) (failure to state a claim).

For Rule 12(b)(6) motions, a claimant's factual allegations must be "enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atlantic Corp. v. Twombly,

550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim of relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

### III. Discussion

#### A. Subject-Matter Jurisdiction

To adjudicate a case, a court must have subject-matter jurisdiction over the claims presented. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998). "[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the [claim] in its entirety." Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006). Majestic Mills argues that the court lacks jurisdiction over UPS's cross-claim on two distinct grounds. First, Majestic Mills contends the court cannot exercise jurisdiction over UPS's cross-claim due to the parties' inclusion of a forum selection provision in their contract that purports to place sole jurisdiction over the relevant claims in the federal and state courts of Georgia. See Majestic Mills' Mot. at 10; Majestic Mills' Reply at 6-9. Alternatively, Majestic Mills contends that the subject of UPS's cross-claim is outside the narrow jurisdiction over cross-claims granted to this Court by 28 U.S.C. § 1583. See Majestic Mills' Reply at 9-13.[2]

---

[2] The court notes that while it typically considers arguments not raised until a party's reply brief to be waived, arguments as to the court's subject-matter jurisdiction must be considered, as "federal courts are duty-bound to examine the basis of subject-matter jurisdiction sua sponte." See Union Planters Bank Nat. Ass'n v. Salih, 369 F.3d 457, 460 (5th Cir. 2004); 13 Charles A. Wright et al., Federal Practice & Procedure § 3522 (3d ed. 2017).

## 1. Forum Selection Clause

Majestic Mills argues that the contractual basis for UPS's cross-claim, as evidenced by the 2012 UPS SCS Terms and Conditions produced by UPS, contains a forum selection clause that allegedly places jurisdiction over the parties' disputes relating to this contract solely within the federal and state courts of Georgia. Majestic Mills contends that UPS's reliance on the terms and conditions language and acceptance of those terms as binding necessitates the conclusion that the exclusive federal jurisdiction over cross-claims for actions initiated in this Court granted by § 1583 should yield to the jurisdictional limits imposed by the forum selection clause. As a result, Majestic Mills argues UPS is unable to bring its cross-claim, and this Court lacks jurisdiction to adjudicate that cross-claim. See Majestic Mills' Mot. at 10.  Specifically, the terms and conditions language provides: "Customer and Company (a) irrevocably consent to the jurisdiction of the United States District Court and the State courts of Georgia; (b) agree that any action relating to the services performed by Company, shall only be brought in said courts." Id. Although this wording is taken from the 2012 version of the UPS SCS Terms and Conditions and not an earlier edition, which allegedly binds the parties (a copy of which has yet to be produced before the court), UPS concedes the forum selection provision exists and applies in the relevant Terms and Conditions. See UPS's Resp. at 8.

Despite acknowledging the existence of the forum selection provision, UPS argues that the court is not precluded from ruling on its cross-claim and that jurisdiction is still proper under § 1583, which states that "in any civil action in the Court of International Trade, the court shall have exclusive jurisdiction to render judgment upon any

counterclaim, cross-claim, or third-party action of any party." Id. (quoting 28 U.S.C. § 1583) (emphasis added). While UPS may not have had the right to initiate a lawsuit in this Court under the forum selection clause, UPS argues that once the primary action was initiated by the United States, it had a right to defend itself and bring its cross-claim against Majestic Mills. Id.

As Majestic Mills notes, the Supreme Court has upheld the validity of forum selection clauses unless the enforcement would be "unreasonable, unfair, or unjust." See M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 8-20 (1972). But in cases where the subject matter involves issues of exclusive federal subject-matter jurisdiction, such as bankruptcy under 28 U.S.C. § 1334(a) or patent under 28 U.S.C. § 1338(a), courts have declined to enforce forum selection clauses. See, e.g., In re Icenhower, 757 F.3d 1044, 1051 (9th Cir. 2014) (affirming decision not to enforce forum selection clause where matter at issue was "core proceeding" properly centralized and handled in federal bankruptcy court); Highland Supply Co. v. Klerk's Flexible Packaging, B.V., No. 05-CV-482-DRH, 2005 WL 3534211, at *2, *4 (S.D. Ill. Dec. 21, 2005) (explaining that "because federal courts have exclusive jurisdiction over patent claims, the Agreement's forum-selection clause is of no consequence").

The statutory language is unambiguous: the U.S. Court of International Trade is granted exclusive jurisdiction over cross-claims if they involve the imported merchandise at issue in the main civil action. 28 U.S.C. § 1583. This grant of jurisdiction is for good reason: to promote judicial expediency and to reduce costs for both parties by allowing a single court to hear all facts and circumstances related to the cross-claim as well as the

underlying action. If UPS had commenced its own lawsuit outside of the main pleadings, it would be required to do so under the terms of the forum selection clause; however, as a cross-claim emanating from a civil action launched by the United States naming both UPS and Majestic Mills as defendants, UPS has a right to bring its cross-claim against Majestic Mills and have that claim heard by this Court so long as it falls within the scope of jurisdiction granted by 28 U.S.C. § 1583.

### 2. Scope of § 1583

28 U.S.C. § 1583 grants the court the ability to render judgment on a cross-claim when "(1) such claim or action involves the imported merchandise that is the subject matter of such civil action, or (2) such claim or action is to recover upon a bond or customs duties relating to such merchandise." 28 U.S.C. § 1583. Majestic Mills argues in its reply that even if the court does not find an exercise of jurisdiction prevented by the parties' forum selection clause, § 1583(1) is not applicable to provide the court with subject-matter jurisdiction because UPS's cross-claim does not "involve the imported merchandise" that is the subject of the underlying action. Majestic Mills' Reply at 9-13. Majestic Mills argues that UPS's cross-claim addresses issues wholly separate from the imported merchandise and should be litigated outside the Court of International Trade. Id.

The court interprets § 1583 broadly. Cormorant Shipholding Corp. v. United States, 33 CIT 440, 446, 617 F. Supp. 2d 1270, 1276 (2009) (citing United States v. Mecca Export Corp., 10 CIT 644, 645-47, 647 F. Supp. 924, 925-27 (1986); M & M/Mars Snackmaster, Div. of Mars, Inc. v. United States, 5 CIT 43, 44 (1983)). The court has dismissed

counterclaims or cross-claims when the subject matter involves entries outside the underlying action, but this cross-claim only asks the court to consider the same 272 entries that are subject of the underlying action. Cf. United States v. Lun May Co., Inc., 11 CIT 18, 652 F. Supp. 721 (1987) (holding that claims permitted under § 1583 are limited to those relating to entries subject to underlying action). UPS asks the court to render judgment on which party is liable to pay the duties and fees sought by Plaintiff United States involving those entries. The only relief sought by UPS in its cross-claim is reimbursement of the amount Plaintiff obtains from UPS in the underlying action plus legal expenses. UPS's Cross-Claim at 14. Given the related scope and remedies between the cross-claim and the underlying action, the court holds that UPS's cross-claim "involves the imported merchandise" and falls under § 1583(1).

The legislative history further supports the court's conclusion that the scope of § 1583 covers cross-claims such as the one in this action. Majestic Mills points to language from a committee report discussing the passage of the Customs Courts Act of 1980 ("Act"), which included § 1583 and empowered the Court of International Trade to hear cross-claims. See Majestic Mills' Reply at 11. Majestic Mills contends that this grant of authority to the court was to allow only the Government to file counterclaims against importers and for bond sureties and principals to cross-claim against each other. Id. However, Majestic Mills' proposed narrow interpretation of § 1583 is at odds with other language from the same report that clarifies that the intention of the Act was to allow the court "to fully adjudicate the rights of all interested parties." Customs Courts Act of 1980,

H.R. Rep. No. 96-1235, 96th Cong., 2d Sess. at 37 (1980), reprinted in 1980 U.S.C.C.A.N. 3729, 3749 (emphasis added). Further, the report noted that "the inclusion of cross-claims and third party actions will permit the Court of International Trade to adjudicate the rights of all affected parties to an international trade civil action. In this way, the committee is promoting judicial economy and assuring uniformity in the judicial decision-making process." Id. at 50, 1980 U.S.C.C.A.N. at 3761. The report speaks of adjudicating the rights of all interested parties in the action and does not limit the ability to hear cross-claims to those solely posed by the Government or between sureties and principals. Accordingly, a cross-claim that has the same entries as the underlying action and seeks relief from liability in the underlying action is properly before the court under the grant of authority within § 1583(1).

Majestic Mills also relies on a decision from the U.S. Court of Appeals for the Fifth Circuit in Int'l Fidelity Ins. v. Sweet Little Mexico Corp., 665 F.3d 671 (5th Cir. 2011) to argue that this Court does not always have exclusive jurisdiction over permissive cross-claims emanating from a civil action before it. See Majestic Mills' Reply at 12-13. In the underlying action of that case, International Fidelity Insurance Corp. ("IFIC"), a surety, brought suit against the United States in the Court of International Trade to challenge a denied protest. IFIC subsequently filed a separate suit in the District Court for the Southern District of Texas against the bond's principal, Sweet Little Mexico Corp. ("SLM"), seeking indemnification for and reimbursement of amounts paid to Customs. SLM moved to dismiss the case by arguing that venue for hearing the claim was only proper as a

counterclaim, cross-claim, or third-party action before the Court of International Trade under § 1583. The district court upheld its own jurisdiction and the Fifth Circuit affirmed. Sweet Little Mexico Corp., 665 F.3d at 673. While it is true that, in that case, a claim emanating from a civil action before the Court of International Trade was allowed to proceed outside of this Court, examination of the Fifth Circuit's reasoning shows why the procedural posture of that case is inapposite:

> In the action initiated in the CIT by IFIC, the only other party is the United States. IFIC, even were it inclined to do so, could not bring a "counterclaim" or a "cross-claim" against SLM because SLM is not a party to the contest of Customs' denial of IFIC's protest. Nor could IFIC bring a third-party action against SLM in that proceeding. The commonly understood meaning of a third-party action is that it is one brought by a defendant against a third party. Technically speaking, the United States is the defendant in the action that IFIC initiated in the CIT. The CIT's rules of procedure provide that a defendant may bring in a third party "who is or may be liable to it for all or part of the claim against it." The United States has not joined SLM as a third-party defendant, so there is no basis on which IFIC could assert a third-party action against SLM under Rule 14(a)(3) of the CIT's rules of procedure.

Id. at 675. In other words, the Fifth Circuit allowed IFIC's claim against SLM to proceed outside of this Court because SLM was not a party in the original case heard before the Court of International Trade. IFIC did not have the procedural ability as a plaintiff in the action before this Court to file suit against SLM in a counterclaim, cross-claim, or third-party action as allowed under § 1583. In contrast, UPS and Majestic Mills are both defendants in the main action brought by the United States. Accordingly, UPS's cross-

claim is properly before the court, and the court affirms its jurisdiction to adjudicate the cross-claim under § 1583.

### B. Procedural Posture of Motion to Dismiss

As a preliminary matter, UPS contends that Majestic Mills' motion to dismiss is procedurally improper and should only be considered as a motion for summary judgment under USCIT Rule 56. <u>See</u> UPS's Resp. at 4-5. Specifically, UPS argues that because Majestic Mills filed a responsive pleading to UPS's cross-claim, <u>see</u> Majestic Mills' Cross-Claim Answer, Majestic Mills has forfeited its right to file a motion to dismiss and its present motion must be treated as a motion for summary judgment. UPS fails to mention, however, that Majestic Mills filed its motion to dismiss in accordance with a scheduling order entered by this Court on consent motion by all of the parties, <u>including UPS</u>. <u>See</u> Majestic Mills' Reply at 1-2; Consent Mot. For Scheduling Order (Jan. 4, 2017), ECF No. 53; Order Granting Consent Mot. & Entering Scheduling Order (Jan. 6, 2017), ECF No. 54 (ordering that the parties "may file any motions regarding the pleadings or other preliminary matters and <u>4174925 Canada Inc. shall file its motion to dismiss UPS's counterclaims on or before March 10, 2017</u>." (emphasis added)). The parties consented to a schedule that expressly provided for Majestic Mills to make a motion to dismiss UPS's cross-claim by March 10, 2017, and requested an order from the court adopting this schedule over two months after Majestic Mills had filed its answer to UPS's cross-claim.

Therefore, UPS cannot now contend that Majestic Mills' motion to dismiss is procedurally improper given that it is timely filed in accordance with the scheduling order entered by the court that was expressly consented to by UPS and all other parties. The court deems waived UPS's objection to the procedural posture of Majestic Mills' motion to dismiss, and will consider Majestic Mills' motion under USCIT Rule 12.

### C.  Count I

Majestic Mills challenges UPS's cross-claim for indemnification ("Count I") as inadequately pled, arguing that UPS's allegations are conclusory and lack sufficient factual foundation to justify consideration on the merits. See Majestic Mills' Mot. at 10-13. Majestic Mills contends that UPS failed to adequately plead the elements of a contractual indemnity claim, noting UPS's failure to specifically plead facts regarding the specific elements of enforceable contracts, such as adequate consideration and the parties' mutual assent to the terms of the contract, especially Majestic Mills' consent to indemnify UPS. See Majestic Mills' Mot. at 11. Further, Majestic Mills objects to UPS's failure to attach copies of the various written agreements that UPS alleges Majestic Mills entered into as a condition of accepting services from UPS. See id. at 11-12; UPS's Cross-Claim at 8. UPS responds that it reasonably and sufficiently pled factual allegations that, if taken as true, would establish that Majestic Mills validly contracted with UPS for services under terms and conditions that included an enforceable indemnification provision. UPS's Resp. at 9-10. In arguing about the factual deficiencies in UPS's claim for indemnification as pled, Majestic Mills ignores the proper standard of review for its motion to dismiss. As the non-movant, UPS's factual allegations in its cross-claim are presumed to be true.

See Cedars-Sinai Med. Ctr., 11 F.3d at 1583-84 & n.13. Taking all of the factual allegations in UPS's cross-claim as true, the court agrees with UPS that it has sufficiently pled a cause of action for indemnification against Majestic Mills.

UPS alleges in its cross-claim that Majestic Mills accepted services from UPS, and in the course of entering into this business arrangement agreed to the terms and conditions of five specified written contracts with UPS. See UPS's Cross-Claim at 11-12. Contrary to Majestic Mills' contention in its motion, UPS expressly pleads that Majestic Mills agreed in the course of obtaining UPS's services to accept these contracts and that these contracts contain indemnification provisions supporting UPS's claim for indemnification against Majestic Mills. Id. In so pleading, UPS has plausibly alleged all of the elements that Majestic Mills argues are wanting.

Majestic Mills' objections to UPS's claim essentially argue that UPS has failed to produce adequate proof of factual support for its claims. At the motion to dismiss stage, UPS has no burden to produce the specified contracts, nor must UPS provide proof that Majestic Mills maintained copies of those contracts beyond plausibly alleging that Majestic Mills accepted their terms in the course of acquiring services from UPS. See, e.g., Fox v. Idea Sphere, Inc., No. 12-CV-1342, 2013 WL 3832869, at *2 (S.D.N.Y. July 22, 2013) (plaintiff's allegation that he had enforceable written contracts with defendants was sufficient to survive motion to dismiss, despite inability to produce those contracts); 5A Charles A. Wright et al., Federal Practice & Procedure § 1327 (3d ed. 2017) (explaining how Fed. R. Civ. P. 10(c), which is identical to USCIT Rule 10(c), is permissive and contains no requirement that pleader attach copy of writing on which claim for relief

or defense is based). During the discovery process, UPS may produce proof of its claims and copies of the specified contracts that Majestic Mills contends are wanting, and if that evidence does not exist, Majestic Mills may properly dispose of UPS's claim through a motion for summary judgment. See USCIT R. 12; USCIT R. 56; see also Fox, No. 12-CV-1342, 2013 WL 3832869 at *2 (noting that failure to produce relevant contracts "may well be resolved on a motion for summary judgment" but could not justify dismissal on motion to dismiss). At this stage in the proceeding, however, the court will deny Majestic Mills' motion to dismiss in part, and hold that UPS has adequately pled Count I so as to maintain a claim for indemnification.

Apart from its attack on the adequacy of the pleading of Count I generally, Majestic Mills contends that, as pled, UPS's indemnification claim against Majestic Mills must be limited to entries or conduct that occurred after Majestic Mills executed a Power of Attorney appointing UPS as its customs broker for the subject merchandise in October 21, 2009. See Majestic Mills' Mot. at 8-9; UPS's Cross-Claim at 7. Majestic Mills misreads the plain language of UPS's cross-claim. UPS pled that "[u]pon accepting services from UPS SCS and its affiliates, Majestic Mills also agreed to the terms and conditions of the UPS Tariff, the UPS Canada Terms and Conditions of Service, the UPS Technology Agreement, and the UPS Invoicing Agreement," and pled that these agreements and terms included indemnification provisions. See UPS's Resp. at 7 (quoting UPS's Cross-Claim at 7); see also UPS's Cross-Claim at 8-9. As UPS's claim for indemnification does not solely depend on the October 21, 2009 Power of Attorney, the court will not limit UPS's claim to conduct post-dating that agreement.

### D.  Count II

Majestic Mills argues that UPS's cross-claim for breach of contract ("Count II") is time-barred under Georgia's applicable statute of limitations. See Majestic Mills' Mot. at 16 (arguing that four-year statute of limitations under Official Code of Georgia Annotated ("O.C.G.A.") § 9-3-26 applies to breach of contract claim at issue, rather than six-year statute of limitations under O.C.G.A. § 9-3-24, but noting that UPS's claim is time-barred under either provision).[3] UPS responds that Count II did not accrue when Majestic Mills first provided false NAFTA statements, but rather that Majestic Mills engaged in repeated and continuous breaches by "failing to update or cure the information included in its entries."[4] See UPS's Resp. at 14. UPS provides no citation for its theory that the statute of limitations does not run from the initial breach where a party breaches a contract repeatedly and continuously by failing to cure or notify the aggrieved party. Majestic Mills, however, cites express Georgia law that a claim for breach of contract accrues when the first breach occurs, regardless of subsequent breaches. See Majestic Mills' Mot. at 16 (citing Baker v. Brannen/Goddard Co., 559 S.E.2d 450, 454 (Ga. 2002) (holding that claim under breach of contract accrued "when the first breach of the [contract] occurred")).

UPS also suggests that the statute of limitations could not have run against Count II after Majestic Mills' initial breach because UPS "did not know and should not have known of its claims until well after Majestic Mills provided UPS SCS with false

---

[3] O.C.G.A. § 9-3-24 applies to "simple contracts in writing," while O.C.G.A. § 9-3-26 applies to "all other actions upon contracts express or implied."
[4] UPS also insists that the six-year statute of limitations under O.C.G.A. § 9-3-24 is the governing law for analysis of this issue. UPS' Resp. at 13.

NAFTA Certificates of Origin." UPS's Resp. at 14. Unfortunately for UPS, Georgia law evaluating the statute of limitations for breach of contract claims does not consider whether the aggrieved party is aware of damages from the breach. "The discovery rule is not applicable to a cause of action based on breach of contract; with respect to a breach of contract claim, the statute of limitation runs from the time the contract is broken rather than from the time the actual damage results or is ascertained." Hamburger v. PFM Capital Mgmt., Inc., 649 S.E.2d 779, 782, 286 Ga. App. 382, 385 (2007) (citation omitted). Accordingly, UPS's argument that it "did not know and should not have known of its claims until well after Majestic Mills provided UPS SCS with false NAFTA Certificates of Origin" is irrelevant. As Majestic Mills demonstrates, and UPS does not refute, Majestic Mills breached its contract obligations by providing false NAFTA certificates to UPS no later than January 2010, more than six years prior to the filing of UPS's cross-claim in August 2016. See Majestic Mills' Mot. at 16; UPS's Resp. at 14.

Because the court holds that UPS's breach of contract claim accrued over six years prior to the filing of its cross-claim and is thus time-barred under either provision, see O.C.G.A. § 9-3-24, the court does not reach the question of whether Georgia's four-year or six-year statute of limitations for breach of contract claims is applicable. Similarly, the court does not reach Majestic Mills' alternative argument as to the inadequacy of pleading for Count II. See Majestic Mills' Mot. at 13-15. Accordingly, the court grants Majestic Mills' motion to dismiss as to Count II.

### E.  Counts III & IV

Majestic Mills submits, and UPS does not dispute, that UPS's cross-claim based on fraud and negligent misrepresentation ("Count III" and "Count IV" respectively) under Georgia law are subject to a two-year statute of limitations running from the date the action accrues. See Majestic Mills' Mot. at 20, 22 (citing O.C.G.A. § 9-3-33 (2010)); see also, UPS's Resp. at 14-15 (agreeing that the two-year statute of limitations is applicable and clarifying that the action accrues when the claimant incurs "actual damages"). Majestic Mills takes the position that UPS was aware of the alleged fraudulent conduct no later than May or July 2010 after Majestic Mills filed its NAFTA correction with Customs and requested documents from UPS to facilitate that correction. See Majestic Mills' Mot. at 20. Alternatively, Majestic Mills contends that even assuming UPS lacked clear notice of harm from Majestic Mills' alleged fraud in 2010, Customs' demand for payment from UPS in 2011 and again in 2013 clearly provided notice and injury to UPS sufficient to accrue the causes of action for fraud and negligent misrepresentation and trigger the running of the applicable statute of limitations. Id; see also Majestic Mills' Reply at 14-15.

As Majestic Mills demonstrates, UPS had clear information by November 2013 at the latest, if not earlier, that Majestic Mills had provided false information relating to the NAFTA certificates and that UPS would be held liable by Customs for its submissions relying upon those certificates. See Majestic Mills' Mot. at 20. Moreover, UPS, through its counsel, was aware of the availability of its legal claims as it threatened Majestic Mills with legal action in April 2014 if Majestic Mills did not provide a written stipulation

indemnifying UPS from the damages and duties demanded by Customs. See id. at Ex. N (email from UPS's counsel to Majestic Mills stating that absent written indemnification, UPS "will also bill [Majestic Mills] for the $158,580.89 and, as assessed by CBP, any additional amounts demanded under the case. If [Majestic Mills] does not promptly pay, UPS SCS will aggressively pursue payment and may initiate legal proceedings and file a law suit.").

UPS maintains that it did not incur "actual and certain economic losses until Plaintiff initiated this action on January 12, 2016 and UPS SCS was injured by having to defend against it." UPS's Resp. at 15. UPS, however, provides no response to the fact that it was served with clear demands for payment by Customs well before the initiation of this action, and considered those demands as certain and injurious enough to merit a threat of legal action against Majestic Mills in April 2014. Moreover, as Majestic Mills points out, despite UPS's recognition of the availability of legal claims against Majestic Mills based on the facts known in 2014, "UPS never requested, and Majestic Mills never signed, a statute of limitations waiver for UPS." Majestic Mills' Mot. at 5-6. Based on the unrefuted information presented in Majestic Mills' motion that UPS recognized injury from Majestic Mills' provision of false NAFTA certificates by April 2014, at the very latest, the court holds that UPS's Counts III and IV for fraud and negligent misrepresentation are time-barred under Georgia's applicable two-year statute of limitations. See O.C.G.A. § 9-3-33. Because the court finds Counts III and IV to be time-barred, it does not reach Majestic Mills' alternative arguments as to the inadequacy of pleading

or the duplicative nature of these claims. See Majestic Mills' Mot. at 17-22. Accordingly, the court grants Majestic Mills' motion to dismiss as to Counts III and IV.

### IV. Conclusion

Based on the foregoing reasons, it is hereby

**ORDERED** that Majestic Mills' motion to dismiss UPS's Cross-Claim pursuant to USCIT Rule 12(b)(1) is denied; it is further

**ORDERED** that Majestic Mills' motion to dismiss Count I of UPS's Cross-Claim pursuant to USCIT Rule 12(b)(6) is denied; it is further

**ORDERED** that Majestic Mills' motion to dismiss Counts II, III, and IV of UPS's Cross-Claim as time barred pursuant to USCIT Rule 12(b)(6) is granted; and it is further

**ORDERED** that UPS and Majestic Mills shall file, on or before October 12, 2017, a proposed schedule for further proceedings regarding UPS's Cross-Claim against Majestic Mills giving due consideration to the Scheduling Order, ECF No. 72, governing Plaintiff's claims for duties and civil penalties against Majestic Mills.

                                          /s/ Leo M. Gordon
                                        Judge Leo M. Gordon

Dated: September 29, 2017
       New York, New York